HUMBLE OIL & REFINING COMPANY AND FLAGLER SYSTEM, INC., PETITIONERS v. BOARD OF ALDERMEN OF THE TOWN OF CHAPEL HILL, JOSEPH L. NASSIF, ALICE WELSH, REGINALD D. SMITH, ROSS F. SCROGGS, GEORGE L. COXHEAD AND JAMES C. WALLACE

No. 3

(Filed 26 November 1974)

**Municipal Corporations § 30 — special use permit — evidence improperly considered by Board of Aldermen**

In a proceeding to obtain a special use permit for the construction of an automobile service station on a designated lot in Chapel Hill, the Board of Aldermen erred in denying the permit based on (1) a letter from the N. C. Highway Commission which was highly critical of the application, (2) the MAGDA model zoning ordinance which a member of the Board called to the Board's attention, and (3) the special knowledge of the individual members of the Board which was not disclosed at any public hearing and was unknown to the petitioners, since petitioners had no knowledge of such evidence and no opportunity to refute it.

Chief Justice BOBBITT not sitting.

ON *certiorari* to the North Carolina Court of Appeals to review its decision filed February 20, 1974 (20 N.C. App. 675, 202 S.E. 2d 806) finding no error in the judgment entered in the Superior Court of ORANGE County by *McKinnon, J.,* at the October 19, 1973 Session.

This proceeding originated by petition filed on October 28, 1971, by Humble Oil & Refining Company before the Board of Aldermen of the Town of Chapel Hill requesting a special use permit for the construction of an automobile service station on a designated lot at the intersection of Highway 54 and U. S. 15-501 in the Town of Chapel Hill. The petitioner alleges the permit is authorized by the Chapel Hill zoning ordinance. Flagler System, Inc. was permitted to intervene as petitioner.

A public hearing, as provided by the zoning ordinance, was held at which the applicant appeared and offered evidence in support of the petition. No one appeared in opposition to the permit. The request was referred to the Planning Board which, after review, reported:

"In the opinion of the Planning Board, the proposed development:

"1. Will not materially endanger the public health or safety if located where proposed and developed according to plans as modified by the stipulations . . .;

"2. Meets all required conditions and specifications;

"3. Will not substantially injure value of adjoining or abutting property;

"4. Will be in harmony with the area in which it is to be located and in general conformity with the plan of development of Chapel Hill and its environs, if developed according to the plan as modified by the stipulations . . .

"The Planning Board, therefore, . . . recommends that the Board of Aldermen grant this request. . . . " (Exhibit No. 28.)

The record discloses that after the public hearing was completed, a member of the Board, at a meeting in which the plaintiff was not allowed to particpate, read a letter from the State Highway Commission opposing the granting of the permit. A member of the Board also read from a publication

by the Mid-America Gasoline Dealers Association, Inc. entitled MAGDA's Model Zoning Recommendations. This publication had not been produced or reported at the public hearing. The publication recommended that all gasoline service stations be located in mid-block or on minor street intersections. The publication suggested that stations be spaced 200 feet from major intersections. Further reference was made to abandoned stations as eyesores, potential fire bombs and dangerous to life and property. The publication (Exhibit 23) closes with this statement: "Perhaps there are those who will say the above recommendations are too severe and restrictive. However, one can well visualize how your city will look after such a zoning program has been put into effect."

At the final meeting, by a vote of four to two, the Board of Aldermen denied the permit. In the notice of denial the Board gave this explanation: "[T]hat the use would materially endanger the public health and safety if located where proposed and developed according to the plans submitted."

The petitioners, by certiorari, obtained a review by the superior court which affirmed the decision of the Board of Aldermen. On further review the Court of Appeals affirmed the judgment of the superior court. Our writ of certiorari brought the proceeding here for final review.

*F. Gordon Battle of Bryant, Lipton, Bryant & Battle, P.A.; K. Byron McCoy of Newsom, Graham, Strayhorn, Hedrick, Murray & Bryson for petitioner appellant, Humble Oil & Refining Company; John T. Manning for petitioner appellant Flagler System, Inc.*

*Haywood, Denny & Miller, by Emery B. Denny, Jr., for respondent appellees.*

HIGGINS, Justice.

The factual background of this proceeding indicates that in the early stages, decisions were favorable to the petitioners. In the concluding stages, however, the Board of Aldermen disregarded the findings of the Planning Board and concluded "that the use would materially endanger the public health and safety if located where proposed and developed according to the plans as submitted." These findings are tainted by evidence that the Board improperly considered a letter from the Highway Commission opposing the permit. This letter was dated

nine days after the public hearing. The Board also considered and apparently was impressed by the model zoning regulations, parts of which were read into the record by a member of the Board, also after the public hearing date. The consideration of these documents was challenged by proper exceptive assignments.

By considering the Highway Commission's letter dated after the last hearing and by considering the model zoning regulations prepared by MAGDA, the Board of Aldermen committed error which the superior court, on review, failed to correct.

The recent decision of this Court between the same parties, involving a different location in Chapel Hill, was decided on January 25, 1974 *(Refining Co. v. Board of Aldermen, 284 N.C. 458, 202 S.E. 2d 129)* and hence was not available to the Chapel Hill authorities during the consideration of this proceeding. The Court, citing abundant authority, held:

"When a board of aldermen, a city council, or zoning board hears evidence to determine the existence of facts and conditions upon which the ordinance expressly authorizes it to issue a special use permit, it acts in a quasi-judicial capacity. Its findings of fact and decisions based thereon are final, subject to the right of the courts to review the record for errors in law and to give relief against its orders which are arbitrary, oppressive or attended with manifest abuse of authority. (Citing cases.)"

"When an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it. A denial of the permit should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record. . . . In no other way can the reviewing court determine whether the application has been decided upon the evidence and the law or upon arbitrary or extra legal considerations.

"If there be facts within the special knowledge of the members of the Board of Aldermen or acquired by their personal inspection of the premises, they are properly considered. However, they must be revealed at the public hearing and made a part of the record so that the applicant will have an opportunity to meet them by evidence or argument

and the reviewing court may judge their competency and materiality. (Citing many authorities.)"

The petitioners attended a public hearing and presented evidence in support of the application for the permit. The Board of Aldermen referred the application to the Planning Board which gave its unqualified approval. Though notices of the meetings were published, no one appeared in opposition to the permit.

The opposition to the permit appears to have developed in a subsequent session of the Board of Aldermen in which Humble was not allowed to participate. The minutes of the Board indicate the denial of the permit was based on the consideration of one or more of these factors: (1) The letter from the North Carolina Highway Commission which was highly critical of the application; (2) the MAGDA model zoning ordinance which a member of the Board called to the Board's attention; (3) the special knowledge of the individual members of the Board which was not disclosed at any public hearing and was unknown to the petitioners. The use of any of these factors before the Board under the circumstances disclosed was in direct violation of our decision in *Refining Co. v. Board of Aldermen, supra. Jackson v. Board of Adjustment*, 275 N.C. 155, 166 S.E. 2d 78; *Craver v. Board of Adjustment*, 267 N.C. 40, 147 S.E. 2d 599; *Jarrell v. Board of Adjustment*, 258 N.C. 476, 128 S.E. 2d 879.

The record indicates that the Board of Aldermen in a subsequent meeting, considered and were influenced by evidence of which the petitioners had neither knowledge nor opportunity to refute, and which had not been presented at the public hearing. Based in part at least on the foregoing, the Board denied the application. The superior court and the Court of Appeals committed prejudicial error by affirming the findings, conclusions and order of the Board denying the permit.

As this Court stated in *Refining Co. v. Board of Aldermen, supra:*

"(1) The party whose rights are being determined must be given the opportunity to offer evidence, cross-examine adverse witnesses, inspect documents, and offer evidence in explanation and rebuttal; (2) absent stipulations or waiver such a board may not base findings as to the existence or nonexistence of crucial facts upon unsworn

statements (Citations omitted) ; and (3) crucial findings of fact which are 'unspported by competent, material and substantial evidence in view of the entire record as submitted' cannot stand."

The decision of the Court of Appeals is reversed. That Court will remand to the Superior Court of Orange County for entry of judgment vacating the findings and order of the Board of Aldermen of Chapel Hill and directing the Board of Aldermen to proceed *de novo* to reconsider the petitioners' application in conformity with this opinion.

Reversed and remanded.

Chief Justice BOBBITT not sitting.