DOCKSIDE DISCOTHEQUE, INC. v. BOARD OF ADJUSTMENT OF THE TOWN OF
SOUTHERN PINES

No. 9320SC1032

(Filed 21 June 1994)

1. **State § 10 (NCI4th)— board of adjustment—violation of open meetings law—decision not declared void**

   Assuming that an "executive session" was held by a board of adjustment in violation of N.C.G.S. § 143-318.11, the trial court did not abuse its discretion in refusing to declare the decision of the board null and void where the court concluded that the alleged executive session had little effect upon the substance of the challenged action, and the record fails to show that this determination is manifestly unsupported by reason.

   **Am Jur 2d, Administrative Law § 101.**

2. **Zoning § 110 (NCI4th)— board of adjustment decision— absence of findings and conclusions—remand not required**

   Although a board of adjustment failed to make findings and conclusions as required by the town's unified development ordinance in its decision that the use of petitioner's premises for topless entertainment violated the ordinance, remand for findings was not necessary where the record presented no genuine issues of material fact, and a complete understanding of the issues presented could be had from the record on appeal.

   **Am Jur 2d, Zoning and Planning §§ 799 et seq.**

3. **Zoning § 47 (NCI4th)— amendment of ordinance—prohibition of topless entertainment in central business district— property not nonconforming use**

   Petitioner was not entitled to use its property in a town's central business district for topless entertainment as a "nonconforming situation" allowed by the town's unified development ordinance where the ordinance was amended on 13 November 1990 to prohibit "special use entertainment" such as topless entertainment in the central business district; topless entertainment had been provided on petitioner's property at intervals of once a week to once every two to three months between 1983 and December 1989; there was no topless entertainment on the property from December 1989 until 22 March 1991; on 13 Novem-

ber 1990, the date the ordinance was amended, the property had not been used for topless entertainment in eleven months; and, therefore, petitioner's property did not meet the requirement for a nonconforming use that there be an "existing lot or structure or use of an existing lot or structure" at petitioner's locale on the date of the amendment which did not conform "to one or more of the regulations applicable to the district in which the lot or structure is located."

**Am Jur 2d, Zoning and Planning §§ 624 et seq.**

Appeal by petitioner from judgment entered 14 June 1993 in Moore County Superior Court by Judge Thomas W. Seay. Heard in the Court of Appeals 24 May 1994.

*Hatch, Little, & Bunn, by Clyde Holt, III, for petitioner-appellant.*

*Gill & Dow, by Douglas R. Gill, for respondent-appellee.*

GREENE, Judge.

Dockside Discotheque, Inc. (Dockside) appeals from a judgment signed 14 June 1993 in Moore County Superior Court, affirming the Board of Adjustment of the Town of Southern Pines' (the Board) decision to affirm the Land Use Administrator's (the Administrator) decision, that "the use of [Dockside]'s premises for special entertainment is in violation of Section 179 of the Town of Southern Pines Unified Development Ordinance."

The uncontradicted evidence presented in the record is that Dockside, which is located in the Town of Southern Pines' (the Town) central business district, began providing topless entertainment in 1983 on a semi-regular basis until early December 1989. On 13 November 1990, the Town amended its Unified Development Ordinance (the Ordinance), which was enacted in December 1989, to forbid under Section 179 "special use entertainment" such as topless entertainment in the Town's central business district and to allow such use only in the Town's general business district.

Jerry Reid (Reid) bought Dockside in March 1991 from David Talbert (Talbert) with the intention of operating a topless entertainment club. Talbert, whose privileged license expired in July 1990, last provided topless entertainment in December of 1989. On 22 March 1991, Dockside held its first adult entertainment show since Decem-

ber 1989. By letter dated 22 March 1991, the Administrator informed Reid that the use of Dockside for topless entertainment is violative of Section 179 of the Town's Ordinance, and if the violation were not corrected, he would subject Reid "to the maximum civil penalty allowed by law."

Dockside appealed the Administrator's decision to the Board on the grounds that Dockside is a nonconforming use as defined by Section 121(8) of the Ordinance and that topless entertainment at Dockside is permitted pursuant to Section 127(d) of the Ordinance "because the use was reinstated within 180 days of the effective date of the adoption of Section 179, which was November 13, 1990." After the Board heard from Dockside, the Town, and various witnesses, the following exchange took place:

CHAIRMAN: Are there other questions? Is the Board ready to make a motion?

MR. BOLES: Is there any such thing as executive session?

CHAIRMAN: Okay; we will go into executive session for five or ten minutes. (Whereupon, the Board of Adjustment went into Executive Session at 7:10 p.m. and reconvened the regular session at 7:46 p.m.)[.]

CHAIRMAN: The Board of Adjustment is now back in session. Are we ready to make a motion?

MR. CAMPBELL: Mr. Chairman, I would like to make a motion that the appeal of Dockside, Incorporated be denied, and that the determination by the Administrative Officer be upheld.

This motion was then unanimously carried and the hearing was concluded. Subsequently, Dockside received a letter dated 14 June 1991 regarding its appeal from the Administrator's decision that Dockside was operating a special entertainment use in violation of the Ordinance and its request that Dockside be considered a nonconforming use. The letter stated that "[b]ased upon the evaluation of your request and staff's recommendations, the Board voted to deny the above mentioned requests."

In accordance with N.C. Gen. Stat. § 160A-388(e) (1993), Dockside petitioned the Moore County Superior Court on 12 July 1991 for judicial review of the Board's decision. In the petition, Dockside contended that topless entertainment at its business was a "nonconforming situation" within the meaning of the ordinance and therefore

did not violate the ordinance. Dockside argued in the alternative that the decision of the Board was affected by several procedural errors: (1) the Board "went into an executive session" in violation of Article 33C of Chapter 143 of the North Carolina General Statutes; (2) the motion to deny its appeal from the Administrator did not comply with Section 97(a) of the Ordinance in that it failed to state any reasons to support the motion to deny Dockside's appeal; and (3) the decision of the Board did not state any findings or conclusions as required by Section 106(b) of the Ordinance. The trial court, in affirming the decision of the Board, concluded that (1) because the facts were uncontroverted, the failure of the Board to make findings and conclusions did not require reversal; (2) there was no evidence that an executive session was used to deliberate the matter at issue; (3) if the open meetings law was violated because it affected "the substance of the challenged action," it did not require that the decision be declared null and void; (4) on the merits, the Board correctly determined that Dockside's use of the property was "not a nonconforming situation" within the meaning of the Ordinance.

---

The issues presented are whether (I) the Board's actions violated Article 33C of Chapter 143 of the North Carolina General Statutes relating to open meetings of public bodies so that its actions are null and void; (II) the Board had to set out specific findings of fact and conclusions where the facts are uncontroverted; and (III) Dockside was a nonconforming situation, entitling Dockside to be exempted from the provisions of Section 179.

I

[1] N.C. Gen. Stat. § 143-318.11(a) provides that a "public body," like the Board in this case, N.C.G.S. § 143-318.10(b) (1993), "may hold an executive session and exclude the public" for only twenty permitted purposes which are listed in Section 143-318.11. N.C.G.S. § 143-318.11(a) (1993). An executive session may be held "only upon a motion made and adopted at an open meeting. The motion shall state the general purpose of the executive session and must be approved by the vote of a majority of those present and voting." N.C.G.S. § 143-318.11(c) (1993). If a public body violates Section 143-318.11, the court, after considering evidence offered on any of six factors listed in Section 143-318.16A(c), "may declare any such action null and void." N.C.G.S. § 143-318.16A(a) (1993). The party seeking to rescind the actions taken in executive session has the bur-

den of producing evidence concerning one or more of the six factors. *Cf. White v. White*, 312 N.C. 770, 776, 324 S.E.2d 829, 832 (1985) (in equitable distribution action, party desiring unequal division bears burden of producing evidence concerning one or more of the twelve factors listed in Section 50-20). Whether to declare a board's action null and void is within the discretion of the trial court, *see In re Hardy*, 294 N.C. 90, 97, 240 S.E.2d 367, 372 (1978) (where "may" is used, it will ordinarily be construed as permissive and not mandatory), and can be reversed on appeal only if the decision is "manifestly unsupported by reason" and "so arbitrary that it could not have been the result of a reasoned decision." *White*, 312 N.C. at 777, 324 S.E.2d at 833.

Dockside, in support of its motion to have the decision declared null and void, contends that the "secret meeting" of the Board prevented it from having "knowledge of the basis of the Board's denial of the current appeal; therefore, the 'substance of the challenged action' is affected in that a meaningful appellate review is now not possible." This allegation is apparently based on the first of the six factors listed in Section 143-318.16A(c), which provides that the court is to consider "[t]he extent to which the violation affected the substance of the challenged action." N.C.G.S. § 143-318.16A(c)(1) (1993). The trial court concluded that the alleged executive session "had little effect upon the substance of the challenged action," and we are unable to hold on this record that this determination is manifestly unsupported by reason. Therefore, assuming the "executive session" of the Board was held in violation of Section 143-318.11, Judge Seay did not abuse his discretion in refusing to declare the decision of the Board null and void.

## II

[2] Section 106(b) of the Ordinance provides that the Board's "written decision shall state the board's findings and conclusions, as well as supporting reasons or facts." *Southern Pines, N.C., Unified Development Ordinance* § 106(b) (Dec. 1989) [*Ordinance*]. Dockside argues that the Board's failure to follow this procedure requires remand. We disagree.

As a general rule, when findings and conclusions are required and not entered, the appellate court "may vacate the judgment and remand the case for findings." 9 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2577, at 697 (1971) (discussing civil procedure Rule 52(a)) [*Wright*]. Because, however,

"findings are not jurisdictional, . . . the appellate court may decide the appeal without further findings if it feels that it is in a position to do so." *Wright* at 699-700. For example, "the appellate court will determine the appeal without more if the record sufficiently informs it of the basis of decision of the material issues . . . or if the facts are undisputed [and different inferences are not permissible]." *Id.* at 700-02; *see Withrow v. Larkin*, 421 U.S. 35, 45, 43 L. Ed. 2d 712, 722 (1975) (remand for findings and conclusions not ordered where it was unlikely to "add anything essential to the determination of the merits").

In this case, although the Board did not make any findings or conclusions, the record presents no genuine issues of material fact, and a complete understanding of the issues presented can be had from the record on appeal. Accordingly, remand is not necessary. Dockside also argues in its brief that Mr. Campbell's motion to deny its appeal was defective because it failed to include any "specific reasons" in support of the motion as required by Section 97(a) of the Ordinance. We do not address this argument because it was not the subject of an assignment of error. N.C. R. App. P. 10(a) (1994).

III

**[3]** Dockside contends that because it meets the definition of a "nonconforming situation" and because "the activity was conducted on the premises within 180 days of the effective date of the adoption of Section 179" and has never discontinued adult entertainment "without a present intention of resuming that activity," it can continue to provide adult entertainment under Section 122 of the Ordinance. We disagree.

Section 122 of the Ordinance provides that "subject to the restrictions and qualifications set forth in Sections 123 through 128, nonconforming situations that were otherwise lawful on the effective date of this chapter may be continued." *Ordinance* § 122(a). Section 127(b) of the Ordinance provides in pertinent part:

(b) If the principal activity on property where a nonconforming situation . . . exists is (i) discontinued for a consecutive period of 180 days, or (ii) discontinued for any period of time without a present intention of resuming that activity, then that property may thereafter be used only in conformity with all of the regulations applicable to the preexisting use unless the board

of adjustment issues a special use permit to allow the property to be used for this purpose without correcting the nonconforming situations.

. . . .

(d) When a structure or operation made nonconforming by this chapter is vacant or discontinued at the effective date of this chapter, the 180-day period for purposes of this section begins to run on the effective date of this chapter.

*Ordinance* § 127(b), (d). First, there must be a determination that a nonconforming situation exists so that these provisions apply. A nonconforming situation is "[a] situation that occurs when, on the effective date of this chapter, an existing lot or structure or use of an existing lot or structures does not conform to one or more of the regulations applicable to the district in which the lot or structure is located. . . ." *Ordinance* § 121(8).

Even accepting Dockside's argument that the "effective date of this chapter" is 13 November 1990, the date the Ordinance was amended to add Section 179 forbidding "special use entertainment" in Dockside's district rather than December 1989 when the Ordinance itself was enacted, Dockside does not meet the definition of a nonconforming situation. There was no topless entertainment provided at Dockside on 13 November 1990 and no evidence that the property on that date was regularly used for that purpose. The record does reveal that between 1983 and December 1989, topless entertainment was provided on this property at intervals of anywhere from once a week to every two or three months. There was no topless entertainment on the property from December 1989 until 22 March 1991. Thus, on 13 November 1990, the property had not been used for topless entertainment in eleven months, and there is no evidence that its nonuse was beyond the control of Dockside. *See Flowerree v. City of Concord*, 93 N.C. App. 483, 378 S.E.2d 188 (1989) (no cessation of nonconforming use where owner made effort to continue nonconforming use of property). Therefore, on 13 November 1990, there was not at Dockside's locale "an existing lot or structure or use of an existing lot or structures" which did not conform "to one or more of the regulations applicable to the district in which the lot or structure is located." Because Dockside cannot meet the definition of a nonconforming situation, neither Section 122 nor Section 127 applies, and the Board was correct in determining that Dockside

was not entitled to be exempted from the provisions of Section 179 prohibiting adult entertainment in Dockside's district. For these reasons, the decision of the trial court is

Affirmed.

Judges JOHN and McCRODDEN concur.