SHARON BALLAS AND SHELLEY BURTT, PETITIONERS v. THE TOWN OF WEAVERVILLE AND THE TOWN OF WEAVERVILLE ZONING BOARD OF ADJUSTMENT, RESPONDENTS

No. COA95-222

(Filed 2 January 1996)

**Zoning § 71 (NCI4th)— denial of permit for bed and breakfast—failure to include specific reasons for denial—court unable to review**

There was competent and adequate evidence that the bed and breakfast proposed by petitioners would substantially impair property values within the neighborhood, but there was no evidence that water and sewer facilities were inadequate; therefore, because respondent board of adjustment's written decision did not include any findings to identify the specific reasons for denying petitioners a special use permit, it is impossible for the court on appeal to effectively review the validity of the board's decision.

**Am Jur 2d, Zoning and Planning §§ 803-806.**

**Zoning: construction and effect of statute requiring that zoning application be treated as approved if not acted on within specified period of time. 66 ALR4th 1012.**

Appeal by petitioners from order entered 15 November 1994 in Buncombe County Superior Court by Judge Claude S. Sitton. Heard in the Court of Appeals 16 November 1995.

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Albert L. Sneed, Jr. and Craig Dixon Justus, for petitioner-appellants.*

*Roberts Stevens & Cogburn, P.A., by William Clarke, for respondent-appellees.*

GREENE, Judge.

Sharon Ballas and Shelley Burtt (petitioners) appeal an order affirming the Town of Weaverville Zoning Board of Adjustment's (the Board) denial of petitioners' request for a special use permit.

Petitioners applied for a special use permit in the Town of Weaverville (Town), which would allow them to locate and operate a bed and breakfast in a residential area on Hamburg Mountain. Zoning Ordinance § 17-111 (section 17-111) provides that seven criteria must be met before the Board may approve a special use permit. The two relevant sections state:

(2) The special exception will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted nor substantially diminish and impair property values within the neighborhood.

. . . .

(5) Adequate utilities, access roads, drainage and/or other necessary facilities have been or are being provided.

At the public hearing, petitioners stated that they were going to convert a "derelict building into a residence compatible with those in the subdivision" and "provide such a facility that the neighborhood residents" would recommend it to their "out-of-town friends." Several neighbors stated that they were in favor of the bed and breakfast because petitioners did an excellent job of renovating the home, and it would be "an attribute to the community." A general certified real estate appraiser who had examined the property and surrounding area and compared it to what happened in another community, presented evidence that the bed and breakfast would lower surrounding property values from 11-23%. The petitioners further offered that the "public water and sewer lines have been installed . . . and serve the subject property."

After the public hearing was closed, the Town manager informed the Board that the roads and utilities had not yet been accepted by the Town for maintenance. The Board voted 4-1, denying petitioners' request for the special use permit. In denying the request the Board found that the "proposed plans . . . [do] not meet the specific design or other criteria as defined in Section 17-111 Standards of the Town of Weaverville Zoning Ordinance."

Pursuant to N.C. Gen. Stat. § 160A-388(e), petitioners appealed the decision to superior court. After consideration of all the available evidence, the court affirmed the Board's decision, concluding that "[p]etitioners failed to produce competent, material, and substantial evidence to show compliance with Section 17-111 of the . . . Zoning Ordinance."

---

The issues are (I) whether there is substantial, competent, and material evidence to support a finding that the petitioners failed in their burden of showing compliance with Section 17-111; and if so, (II) whether the decision of the Board is deficient because of its lack of findings of fact.

Although not governed by the North Carolina Administrative Procedure Act (the Act), N.C.G.S. § 150B (1995), the principles of the Act are "highly pertinent" to this Court's review of decisions of a town board. *Concrete Co. v. Board of Comm'rs*, 299 N.C. 620, 625, 265 S.E.2d 379, 382 (1980). Consistent with the principles of the Act, the duty of this Court includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Id.* at 626, 265 S.E.2d at 383. This duty of review, however, is limited to those errors "which [are] alleged to have occurred." *Brooks v. Ansco & Assocs.*, 114 N.C. App. 711, 716, 443 S.E.2d 89, 92 (1994); *see*

*Watson v. N.C. Real Estate Comm'n*, 87 N.C. App. 637, 640, 362 S.E.2d 294, 296 (1987) ("review is limited to assignments of error to the superior court's order"), *cert. denied*, 321 N.C. 746, 365 S.E.2d 296 (1988). "Where it is alleged that the [Board's] decision was based upon an error of law, *de novo* review [by this Court] is required." *Brooks*, 114 N.C. App. at 716, 443 S.E.2d at 92.

> Where it is alleged the [Board's] decision is not supported by substantial evidence, or is arbitrary and capricious, review is to be conducted under the "whole record" test, which requires [this Court] to examine all competent evidence in the record, including that which detracts from the [Board's] decision . . . to determine if the [Board's] decision was supported by substantial evidence.

*Id.* (citations omitted); *see Dockery v. North Carolina Dept. of Human Resources*, 120 N.C. App. 827, 830, 463 S.E.2d 580, 583 (1995); *Concrete Co.*, 299 N.C. at 626, 265 S.E.2d at 383 (appellate court determines "whether the evidence before the town board was supportive of its action").

I

The petitioners first argue that they presented "competent, material, and substantial evidence" on each of the conditions required by the ordinance and that because there is no contrary evidence, the Board erred in denying the special use request. The Board contends that the petitioners did not present "competent, material, and substantial evidence" on the effect of the proposed bed and breakfast on the value of adjacent properties and the adequacy of water and sewer lines.

Section 17-111(2) of the Town ordinance requires the petitioner to show that the granting of the special use permit will not "substantially diminish and impair property values within the neighborhood." The petitioners' evidence on this point, that the bed and breakfast would be an "attribute to the community," supports an inference that it would not impair the property values in the neighborhood. *See Watt v. Housing Auth.*, 264 N.C. 127, 130, 141 S.E.2d 11, 13 (1965) ("inferences may be drawn if a proper factual basis exist for them"). Thus, on this issue the petitioners did present a *prima facie* case supporting issuance of the permit and denial of the permit on this basis can be sustained only upon "findings contra which are supported by competent, material, and substantial evidence." *See Refining Co. v. Bd. of Aldermen*, 284 N.C. 458, 468, 202 S.E.2d 129, 136 (1974). On this issue,

the testimony of a real estate appraiser that the bed and breakfast would lower the value of the surrounding property from 11-23%, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Rector v. N.C. Sheriff's Educ. and Training Standards Comm'n*, 103 N.C. App. 527, 532, 406 S.E.2d 613, 616 (1991), and is thus substantial evidence. In other words, this testimony *could* support a finding that the bed and breakfast will "substantially diminish and impair property values within the neighborhood." This evidence, however, does not mandate such a finding.

On the question of the adequacy of the water and sewer, the petitioners presented evidence that these facilities had been installed and were serving the property. Because the evidence is that these facilities are in fact operational, there is a reasonable inference that they are adequate. Thus, on this issue the petitioners did present a *prima facie* case supporting issuance of the permit and denial of the permit on this basis can be supported only upon contrary findings supported by substantial, competent and material evidence. *Id.* In this record, there is no contrary evidence on this point. The record does reveal that after the public hearing was closed, the Town manager informed the Board that the water and sewer had not yet been accepted by the Town for maintenance. This information, however, because it was not revealed at the public hearing and therefore not subject to refutation by the petitioners, is not competent evidence and cannot support a finding that these utilities were not adequate. *See Refining Co. v. Bd. of Alderman*, 286 N.C. 170, 173-74, 209 S.E.2d 447, 449 (1974) (party must be given opportunity to "meet" evidence considered by Board).

II

The petitioners next argue that even if the evidence can support a finding that they failed in their burden of showing that the values of the property "within the neighborhood" would not be adversely affected, the Board made no such finding and the decision must therefore be reversed.

As a general rule, zoning boards, "in allowing or denying the application of use permits," are required to "state the basic facts on which [they] relied with sufficient specificity to inform the parties, as well as the court, what induced [their] decision." *Rentals, Inc. v. City of Burlington*, 27 N.C. App. 361, 365, 219 S.E.2d 223, 226-27 (1975). This is so even though the ordinance does not include such a requirement, as in this case. *Shoney's v. Bd. of Adjustment for City of Asheville*, 119 N.C. App. 420, 423, 458 S.E.2d 510, 512 (1995). The fail-

ure to make findings of fact is not, however, fatal if "the record sufficiently informs [the court] of the basis of decision of the material issues . . . or if the facts are undisputed [and different inferences are not permissible]." *Dockside Discotheque v. Bd. of Adjustment of Southern Pines*, 115 N.C. App. 303, 308, 444 S.E.2d 451, 454, *disc. rev. denied*, 338 N.C. 309, 451 S.E.2d 634 (1994). In this case, the Board's written decision does not include any findings to identify the specific reasons for denying the permit. Furthermore, we cannot determine from the record the basis of the decision and some of the relevant evidence is in dispute. It therefore is impossible to effectively review the validity of the Board's decision. *Shoney's*, 119 N.C. App. at 424, 458 S.E.2d at 512. For example, if the denial was based on section 17-111(5), the decision cannot be sustained if it was based on the fact that the water and sewer had not been accepted for Town maintenance. If the denial was based on section 17-111(2), the denial could be sustained if the Board found persuasive the evidence that the bed and breakfast would adversely affect the property values in the neighborhood.

The order of the superior court must therefore be reversed and this cause remanded to the superior court for further remand to the Board for the entry of a new decision with the required findings of fact. We have reviewed the other assignments of error asserted by the petitioners and either reject them or find it unnecessary to address them in light of our holding.

Reversed and remanded.

Judges MARTIN, Mark D., and McGEE concur.